### A00A1842. FREEMAN v. THE STATE.
(548 SE2d 616)

POPE, Presiding Judge.

Melvin Freeman appeals from the denial of his motion for new trial and his conviction of burglary and a violation of the Georgia Controlled Substances Act, contending that the trial court erred in denying his motion to suppress and that the evidence was insufficient to support the verdict.

Construed in favor of the verdict, the evidence shows that at about 3:00 a.m. on February 22, 1999, John Folks, the manager of a video store, was in his office working when he heard a scraping noise followed by breaking glass located at the CVS store next door. Folks saw a car parked outside, called the police, told them that he thought there was a break-in, and gave a description of the car and the license tag number. While still on the phone, Folks saw a man get in the car and leave. He described the man to the police, including that he was wearing a brown jacket. Folks saw the car turn left on North Decatur Road and right onto Clairmont going toward Decatur.

Shortly thereafter, Decatur Police Officer Whidby received a call to be on the lookout for a 1988 blue Buick Century with the license tag number reported by Folks, and he learned that the car may have been involved in a burglary at the CVS. About 25 minutes later he saw a blue Buick Century turn left off Commerce Drive onto Church Street, heading away from Decatur. He followed the car into a motel parking lot, saw a man get out of the car, and confirmed that the license tag number matched the reported number. The man was wearing a leather jacket. Whidby ordered the man to stop, but the man ran up some stairs and said, "I have done nothing wrong," and "Leave me alone." The man went to the third floor, knocked on room 316, and said, "Let me in." After he again pounded on the door, someone let him in the room.

When other officers arrived, they knocked on the door to the room and identified themselves. After about three minutes, a woman opened the door and "stepped to the side." Neither she nor Freeman offered any objection to the officers' entry. Whidby and another officer entered the room with guns drawn. Freeman was lying in bed, totally nude, and sweating profusely. For the purpose of safety, Whidby immediately handcuffed Freeman and the woman and called for backup. Whidby saw a leather jacket in plain view partially stuffed in an open drawer. At trial, Whidby identified Freeman as the man

he saw get out of the Buick and enter the motel room.

Another officer asked Freeman if they could look around the room, and he said, "you can look all you want." The officer then found drug paraphernalia, marijuana, and syringes. The room was also littered with cigarettes and lighters. At one point Freeman asked to put on his jacket. The officer asked him if the leather jacket was his, and Freeman said yes. The officer then searched the jacket and found a crack pipe and something that looked like crack cocaine in a plastic bag. Lab results confirmed the suspicion.

In the Buick the police found a crowbar on the floor, a radio encased in plastic, another radio, a compact disc player, a large garbage bag on the front seat, a can of Skoal tobacco, and some tools. The steering wheel had been broken so that the car could be started without the key.

The CVS store manager responded to an alarm and found the outside door had been pried open and the inner door glass was broken. The checkout counter was in disarray, and several items appeared to be missing, including a couple of CD players, small portable radios, cassette players, electric razors, and cameras. At trial, the manager was able to state that several of the items recovered were items that could come only from a CVS store, and some of them matched the items that he discovered were missing. Those items had been near the checkout counter prior to the burglary. And, for at least one of the CD players, the manager confirmed that it had not been sold before the burglary.

1. Freeman contends that the officers did not have probable cause to enter the motel room and arrest him and that they did not have valid consent to search the room because he was already handcuffed at the time.

> When we review a trial court's decision on a motion to suppress, the evidence is construed most favorably to uphold the findings and judgment of the trial court; the trial court's findings on disputed facts and credibility are adopted unless they are clearly erroneous and will not be disturbed if there is any evidence to support them.

(Citations and punctuation omitted.) *State v. Diamond*, 223 Ga. App. 164, 166 (477 SE2d 320) (1996). See also *State v. David*, 269 Ga. 533, 535 (1) (501 SE2d 494) (1998).

Here, there were conflicting facts, but there was evidence to support the trial court's finding of probable cause. The information about the burglary, the specific identification of the car including the license tag, and the short lapse of time between the incident and locating the car were sufficient to give an articulable suspicion that

Freeman committed a crime and therefore provided grounds for stopping Freeman to question him. See *Terry v. Ohio*, 392 U. S. 1, 21 (88 SC 1868, 20 LE2d 889) (1968).[1] Officer Whidby then ordered Freeman to stop, but Freeman refused to do so and he retreated upstairs and tried to enter room 316. "An individual's flight upon seeing a police officer may be some evidence of guilt." *Harris v. State*, 205 Ga. App. 813, 814 (1) (423 SE2d 723) (1992). And, "[f]light in connection with other circumstances [can be] sufficient to constitute probable cause for arrest without a warrant." (Punctuation and emphasis omitted.) *Green v. State*, 127 Ga. App. 713, 715 (194 SE2d 678) (1972). That is true here. Regardless of whether Whidby had probable cause to arrest Freeman when he initially approached him, after Freeman fled, there was sufficient evidence to support a finding of probable cause to arrest.

The next question is whether the officers were justified in entering the motel room. "The officer gains access justified by the Fourth Amendment by obtaining a warrant, obtaining consent, or by the existence of exigent circumstances which require the officer to act immediately without warrant or consent." *State v. David*, 269 Ga. at 535-536 (2). The State contends that the woman gave permission to enter when she opened the door and stepped to the side. Whether there was consent to entry is a question of fact. *State v. Floyd*, 161 Ga. App. 49, 50 (2) (289 SE2d 8) (1982). In this case the evidence was that the woman who opened the door "stepped to the side" and that neither she nor Freeman objected to entry. Because this is some evidence of consent, we cannot say that the trial court's conclusion that this constituted consent was clearly erroneous. Compare id.

The facts also support the conclusion that the evidence found in the room was properly admitted. The items in Freeman's jacket pocket, which was in plain view, were found because he requested his jacket and the officer was justified in checking the pockets for weapons. OCGA § 17-5-1. The facts support the conclusion that the other objects found in the room were in plain view. See generally *Pickens v. State*, 225 Ga. App. 792, 794 (1) (b) (484 SE2d 731) (1997). Property that appeared to have come from CVS was found on the dresser. Cigarette lighters and syringes were also on the dresser. Freeman does not contest the search of the car.

The court did not err in denying the motion to suppress.

2. Viewed in the light most favorable to the prosecution, *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979), the evidence, although circumstantial, was sufficient to support a conviction

---

[1] "The reasons justifying an investigatory stop need not rise to the level of probable cause, but must be more than a mere hunch and must not be arbitrary or harassing." *Sams v. State*, 265 Ga. 534, 535 (1) (459 SE2d 551) (1995).

for committing burglary and a violation of the Georgia Controlled Substances Act. The license tag number, the leather jacket, the crowbar, and the recovered CVS merchandise still in its packaging linked Freeman to the crime. Any issue of fact regarding the accuracy of Folks' description of the burglar was for the jury to resolve.

*Judgment affirmed. Miller and Mikell, JJ., concur.*

DECIDED JANUARY 29, 2001 —
RECONSIDERATION DISMISSED MARCH 2, 2001.

*Juwayn N. Haddad,* for appellant.

*J. Tom Morgan, District Attorney, Barbara B. Conroy, Robert M. Coker, Anne Long, Assistant District Attorneys,* for appellee.